BEHLING, Plaintiff, vs. WISCONSIN HYDRO ELECTRIC COMPANY, Defendant and Appellant: UNITED PETROLEUM COMPANY, Interpleaded Defendant and Respondent.

*April 8—May 7, 1957.*

For the appellant there was a brief by *Stafford, Pfiffner & Stafford* of Chippewa Falls, and oral argument by *Robert F. Pfiffner*.

For the respondent there was a brief by *Gwin & Fetzner* of Hudson, and oral argument by *John W. Fetzner,* and for the plaintiff there was oral argument by *Wm. Bradford Smith* of Madison.

BROADFOOT, J.   The defendant relies on sec. 262.09 (4), Stats., which provides:

"If the defendant is a foreign corporation (including one created by or under any act of congress) and (a) is doing business in Wisconsin at the time of service, or (b) the cause

of action against it arose out of the doing of business in Wisconsin, service may be made in accordance with the provisions of s. 180.825 or by delivering within or without the state a copy of the summons to any officer, director, or managing agent of the corporation."

Sec. 180.825, Stats., referred to in sec. 262.09 (4), provides that under certain circumstances service of process may be made on a foreign corporation by service on the secretary of state. No attempt was made to make service under this particular statute.

The issue to be determined in this case is whether the interpleaded defendant was doing business in Wisconsin at the time of service. The defendant contends that it was. The interpleaded defendant contends that it was not so doing business in Wisconsin; that its business was entirely interstate in character in that orders were subject to acceptance at its home office in Minnesota, and that all of the goods which it contracted to deliver were shipped in interstate commerce.

The trial court first held that the service on Robert J. Bell was ineffective for the reason that he was not an officer, director, or managing agent of the interpleaded defendant; further, that the activities of the interpleaded defendant on the date of service on F. T. Carpenter, its president, constituted interstate commerce and therefore the foreign corporation was not doing business in Wisconsin as that term is used in sec. 262.09 (4), Stats.

Except for the fact that the Wisconsin statutes relating to service of process must be complied with, the issue involves a question of federal law. Questions of jurisdiction acquired by the service of process on a foreign corporation depend upon whether or not there has been compliance with the due-process provision of the federal constitution.

One general rule as to whether or not a foreign corporation is doing business in a state is given in 20 C. J. S., Corporations, p. 167, sec. 1920, as follows:

"Solicitation of business aided by other manifestations of corporate presence will warrant the conclusion that a foreign corporation is doing business in the state notwithstanding none of such manifestations is singly capable of carrying the weight of such inferences. Some statutes which are held to be constitutional render a foreign corporation soliciting business or a particular kind of business amenable to the jurisdiction of the courts."

That rule has been followed in Wisconsin in *Tetley, Sletten & Dahl v. Rock Falls Mfg. Co.* 176 Wis. 400, 187 N. W. 204, where there was a continuous course of business in the solicitation of orders in this state in response to which defendant's product was from time to time shipped into this state, plus the fact that the soliciting agent collected money. The foreign corporation was held to be doing business here and subject to the service of process out of our courts as provided by the statute then in effect.

In *Petition of Northfield Iron Co.* 226 Wis. 487, 277 N. W. 168, where orders were solicited by a resident agent, we said (p. 492):

"It is our conclusion that so far as the question of state power is concerned, the *International Harvester Co. Case, supra,* must be taken to make valid a statute by a state providing for service upon the soliciting agent of a foreign corporation whose only activity aside from a solicitation of orders within the state is the filling of these orders through the instrumentality of interstate commerce."

In both cases the soliciting agent resided in Wisconsin, orders had to be approved at the home office of the foreign corporation, and all orders were shipped in interstate commerce. Both cases were based on the decision of the United

States supreme court in *International Harvester Co. v. Kentucky*, 234 U. S. 579, 34 Sup. Ct. 944, 58 L. Ed. 1479.

In *Meyers v. Matthews*, 270 Wis. 453, 71 N. W. (2d) 368, the plaintiffs, who claimed to be independent contractors, sought to test the validity of sec. 218.04, Stats. Plaintiffs were nonresidents. They proposed to come into the state of Wisconsin for extended periods in accordance with the business available to solicit offers of assignments of accounts from merchants, doctors, hospitals, and other creditors under a contract with Metropolitan Finance Corporation, a foreign corporation. Plaintiffs proposed to do no collecting but merely to procure on a commission basis offers of assignments. The foreign corporation collected accounts only by mail. In that case we stated (p. 468):

"Metropolitan unquestionably is doing business, and it is doing that business with the aid of its solicitors. Therefore when its solicitors are present in Wisconsin, Metropolitan is present and doing business in Wisconsin. The true relation shown by the evidence to exist between Metropolitan and its solicitors is one of principal and agent. It does not matter for the purposes of this case whether the respondents may be a type of independent contractor or not. We are not concerned here with tort liability or workmen's compensation. What is important here is that the solicitors are agents of Metropolitan."

The controlling federal case is *International Shoe Co. v. Washington*, 326 U. S. 310, 66 Sup. Ct. 154, 90 L. Ed. 95. In that case there was service upon an agent of the shoe company, together with mailing by registered mail to the home office of the company. The shoe company had agents within the state of Washington who solicited orders which were subject to acceptance at its home office in St. Louis, and all goods were shipped in interstate commerce. Pertinent paragraphs from the opinion are as follows (pp. 319, 320):

"It is evident that the criteria by which we mark the boundary line between those activities which justify the subjection of a corporation to suit, and those which do not, cannot be simply mechanical or quantitative. The test is not merely, as has sometimes been suggested, whether the activity, which the corporation has seen fit to procure through its agents in another state, is a little more or a little less. *St. Louis S. W. R. Co. v. Alexander, supra,* 228; *International Harvester Co. v. Kentucky, supra,* 587. Whether due process is satisfied must depend rather upon the quality and nature of the activity in relation to the fair and orderly administration of the laws which it was the purpose of the due-process clause to insure. That clause does not contemplate that a state may make binding a judgment *in personam* against an individual or corporate defendant with which the state has no contracts, ties, or relations. Cf., *Pennoyer v. Neff, supra; Minnesota Commercial Assn. v. Benn,* 261 U. S. 140.

"But to the extent that a corporation exercises the privilege of conducting activities within a state, it enjoys the benefits and protection of the laws of that state. The exercise of that privilege may give rise to obligations, and, so far as those obligations arise out of or are connected with the activities within the state, a procedure which requires the corporation to respond to a suit brought to enforce them can, in most instances, hardly be said to be undue." . . . (p. 319.)

"Nor can we say that the mailing of the notice of suit to appellant by registered mail at its home office was not reasonably calculated to apprise appellant of the suit." (p. 320.)

The record discloses that Bell had worked for the interpleaded defendant for two years prior to moving to La Crosse on February 1, 1953. In Minnesota he worked as a carburetion engineer but claimed that he was merely a salesman in Wisconsin. Prior to that time another agent, who resided at Davenport, Iowa, called on Wisconsin customers and prospective customers of the interpleaded defendant. It appears that the Minnesota company has accounts all over the state of Wisconsin to whom it sells equipment and propane gas. Bell has no authority to sign contracts for his

principal. He carries with him a printed form of the contract used and can explain its provisions to customers and prospective customers. At least in the case of new customers he gets a financial statement from the prospective purchaser which he forwards to the company so that it can pass on the credit standing. He calls on old customers sixty days before the expiration of their annual contracts and determines whether they wish to renew. For renewals or new contracts he sends the required information to the Minnesota office. There a number of copies of the contract are prepared, signed by the company, and mailed to the customer. The customer then signs the copies, retains one for his own use, and returns the others to Minneapolis. Bell spends full time for his employer and in 1955 traveled 35,000 miles in its business. It is also a part of his job to give technical advice.

Under the rules laid down in the *International Shoe Co. Case, supra,* which have not been changed or modified to our knowledge, the interpleaded defendant had a continuous course of business involving contacts, ties, and relations with many people in the state of Wisconsin. The cause of action arises out of its activities within the state. In the conduct of its activities within the state it enjoys the benefits and protection of our state laws. In an annotation appearing in 146 A. L. R. 961, the editors stated the following rule and cite many cases in support thereof:

"While it is a generally accepted proposition that the fact that an office is maintained in a state for the facilitation of the sales of a foreign corporation, at least in the sense of making it more convenient for its salesmen to solicit orders for outside goods, will not, of itself, make the corporation amenable to service of process, very little more is needed, according to the cases, to establish that the corporation is 'doing business' within the state, for this purpose. (And some of the courts have indicated that an aggregate of activities, no one of which would in itself be sufficient to subject the corporation to state jurisdiction, may do so, particularly

if the volume of corporate business in the state is continuous and substantial, principally upon the authority of *International Harvester Co. v. Kentucky*. . . .)"

Bell maintained an office in his home in La Crosse for the facilitation of sales. Although the record is not complete as to whether Bell was authorized to collect money, or where the contract was to be performed, it does disclose a continuous solicitation of sales here, together with the gathering of credit information, the giving of technical advice with reference to laying out piping, all by the agent, and the making of contracts in Wisconsin by the interpleaded defendant. These activities in addition to the continuous solicitation of sales in Wisconsin constitute doing business within the state, as that term is used in sec. 262.09 (4), Stats., by the interpleaded defendant.

In the *International Shoe Co. Case, supra,* service by registered mail was held reasonably calculated to apprise the foreign corporation of the suit. In *Travelers Health Asso. v. Virginia,* 339 U. S. 643, 70 Sup. Ct. 927, 94 L. Ed. 1154, it was held that service by registered mail upon the foreign corporation at its home office was sufficient where all of its solicitations and sales activities were by mail rather than by paid agents. Personal service upon the president of the interpleaded defendant in Minnesota complies with our statute and certainly constitutes due process if service by registered mail without the state does.

*By the Court.*—Order reversed.