AMERICAN TYPE FOUNDERS CO., Inc.,
a Delaware corporation, Plaintiff,

v.

MUELLER COLOR PLATE COMPANY,
a Wisconsin corporation, Defendant,
and

Elmora Corporation, a New Jersey corporation, Impleaded Defendant.

Civ. A. No. 57-C-41.

United States District Court
E. D. Wisconsin.

March 24, 1959.

Laurence E. Gooding, Jr., and Charles S. Quarles of Quarles, Herriott & Clemons, Milwaukee, Wis., for plaintiff.

Robert P. Harland of Whyte, Hirschboeck, Minahan, Harding & Harland, Milwaukee, Wis., for defendant.

George M. Chester of Fairchild, Foley & Sammond, Milwaukee, Wis., for impleaded defendant.

GRUBB, District Judge.

Plaintiff, American Type Founders Co., Inc., a Delaware corporation, brought this action against Mueller Color Plate Company, a Wisconsin corporation (hereinafter called "Mueller"), for an amount allegedly owing on a contract and promissory note. Defendant Mueller counterclaimed against the plaintiff for breach of contract and warranty. Plaintiff filed a cross-complaint against the impleaded defendant, Elmora Corporation, a New Jersey corporation (hereinafter called "Elmora"), claiming that if plaintiff is liable to defendant Mueller on the counterclaim, or if plaintiff cannot collect on the contract and note in the principal action, then it has a right of indemnification against the impleaded defendant Elmora.

The action is now before this court on Elmora's motion to dismiss the cross-complaint or, in lieu thereof, to quash the return of service upon Elmora on the ground that this court does not have jurisdiction over the impleaded defendant because plaintiff's cause of action did not arise out of impleaded defendant's doing business in Wisconsin.

On December 4, 1953, Elmora, then known as American Type Founders, Inc., entered into a contract with Mueller for the sale of certain engraving and printing equipment, f. o. b. seller's factory at Mt. Vernon, New York, or Elizabeth, New Jersey. This contract was at least in part solicited in Wisconsin and executed and delivered in New Jersey. It expressly stated that it was to be governed by the laws of New Jersey.

Under the agreement American Type Founders, Inc., furnished plans and the supervisory services of one erection mechanic to supervise the installation of the equipment in Wisconsin, a phototechnician for two weeks to instruct personnel in the operation of the equipment, and three employees to perform work on the equipment.

American Type Founders, Inc., took a conditional sales contract which it filed with the Register of Deeds; Milwaukee County, Wisconsin. American Type Founders, Inc., was licensed to do business in Wisconsin during the period from prior to December 4, 1953 until February 16, 1956, when it was granted a certificate of withdrawal.

In 1955 American Type Founders, Inc., transferred all its commercial business to Messrs. Jay Levine and David Berdon, plaintiff's predecessors in interest. All right, title, and interest of Messrs. Levine and Berdon under that contract was subsequently transferred to plaintiff corporation, including the contract herein sued upon.

The question now before the court is whether Elmora's activities amount to "doing business" under the Federal and Wisconsin Statutes interpreted in the light of the Fourteenth Amendment.

The pertinent rules and statutes involved are:

Rules 4(d) (3) and (7), F.R.Civ.P. 28 U.S.C.A.

Section 262.09(4) of the Wisconsin Statutes relating to service of process, which provides in part that if the defendant is a foreign corporation and the cause of action against it arose out of the doing business in Wisconsin, service may be made in accordance with the provisions of Section 180.825.

Section 180.825 of the Wisconsin Statutes relating to the method of service on a foreign corporation. Subsection (3) provides that service can be made upon a foreign corporation only in any action or proceedings arising out of or relating to any business transacted or property acquired, held, or disposed of by such foreign corporation within the State.

Section 180.837 of the Wisconsin Statutes provides that a foreign corporation which had been licensed in Wisconsin might withdraw from the State. In doing so it must authorize service to be made on it by service on the Secretary of State with respect to any suit based upon any cause of action arising in the State during the time it was authorized to transact business here.

■ This court has construed the Wisconsin Statutes with respect to service on foreign corporations as broad enough to cover transacting business situations permissible within the confines of due process. Ludwig v. General Binding Corp., D.C.E.D.Wis.1957, 21 F.R.D. 178.

In Huck v. Chicago, St. P., M. & O. R. Co., 1958, 4 Wis.2d 132, 137, 90 N.W.2d 154, 157, the Wisconsin Supreme Court stated:

"We have no hesitancy in holding that the objective of the statute was to give citizens of Wisconsin the right to make use of the courts of this state in instituting causes of action against any foreign corporation, which actually is carrying on business activities within the state, subject only to such limitations as are imposed by the United States constitution. We feel certain that neither the Judicial Council in proposing the changed wording of sec. 262.09(4), Stats., nor this court in promulgating the same, had any intention to hamstring such right by adopting into such subsection any definitions of 'doing business' laid down in past court decisions, which definitions contained limitations which mistakenly were assumed to

be required by the United States constitution."

In International Shoe Co. v. State of Washington, 1945, 326 U.S. 310, 316, 66 S.Ct. 154, 158, 90 L.Ed. 95, the Court decided that:

"* * * due process requires only that in order to subject a defendant to a judgment *in personam*, if he be not present within the territory of the forum, he have certain minimum contacts with it such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.' "

Subsequently, in McGee v. International Life Ins. Co., 1957, 355 U.S. 220, 78 S.Ct. 199, 201, 2 L.Ed.2d 223, the Court upheld a California judgment rendered against a Texas insurance company whose only contacts with the State of the forum were the mailing of a reinsurance certificate to a California resident offering to insure him in accordance with an earlier policy and his acceptance and payment of the premiums by mail until his death.

The Court stated:

"It is sufficient for purposes of due process that the suit was based on a contract which had substantial connection with that State."

In support of this proposition the Court cited, among other cases, S. Howes Co. Inc. v. W. P. Milling Co., Okl., 1954, 277 P.2d 655. The United States Supreme Court had noted probable jurisdiction in connection with an appeal of this case. This was later dismissed on stipulation.

In the Howes case the Oklahoma Supreme Court passed on an action involving contracts similar to those in the case now before this court. In that suit an independent broker suggested a foreign corporation's machinery to an Oklahoma purchaser. The purchaser ordered the machinery, which order was accepted at New York, sold f. o. b. New York, to be shipped and used in Oklahoma. Upon the machinery's failure to perform, the defendant sent an agent who investigated the complaint and suggested certain repairs. The court found these contacts sufficient to support Oklahoma's jurisdiction over the foreign corporation defendant. Compare Erlanger Mills, Inc. v. Cohoes Fibre Mills, Inc., 4 Cir., 1956, 239 F.2d 502.

The McGee case noted the trend of expanding personal jurisdiction over nonresidents. The requirements of personal jurisdiction over nonresidents have evolved from the rigid rule of Pennoyer v. Neff, 1877, 5 Otto 714, 95 U.S. 714, 24 L.Ed. 565, to the flexible standard of the International Shoe Co. case.

The Court stated:

"Looking back over this long history of litigation a trend is clearly discernible toward expanding the permissible scope of state jurisdiction over foreign corporations and other nonresidents. In part this is attributable to the fundamental transformation of our national economy over the years. Today many commercial transactions touch two or more States and may involve parties separated by the full continent. With this increasing nationalization of commerce has come a great increase in the amount of business conducted by mail across state lines. At the same time modern transportation and communication have made it much less burdensome for a party sued to defend himself in a State where he engages in economic activity." McGee v. International Life Ins. Co., 1957, 355 U.S. 220, 222, 78 S.Ct. 199, 201, 2 L.Ed.2d 223.

However, in Hanson v. Denckla, 1958, 357 U.S. 235, 251, 78 S.Ct. 1228, 1238, 2 L.Ed.2d 1283, the Court also noted:

"* * * it is a mistake to assume that this trend heralds the eventual demise of all restrictions on the personal jurisdiction of state courts. * * * However minimal the burden of defending in a foreign tribunal, a defendant may not be called upon to do so unless he has had the 'minimal contacts' with that

State that are a prerequisite to its exercise of power over him."

In determining whether impleaded defendant's activities constitute "doing business" as limited by the Due Process Clause, the court must bear in mind the admonition of the Supreme Court in the International Shoe Co. case when it said at page 319, of 326 U.S. at page 159 of 66 S.Ct.:

> "It is evident that the criteria by which we mark the boundary line between those activities which justify the subjection of a corporation to suit, and those which do not, cannot be simply mechanical or quantitative. * * * Whether due process is satisfied must depend rather upon the quality and nature of the activity in relation to the fair and orderly administration of the laws which it was the purpose of the due process clause to insure."

In Carter v. American Bus Lines, Inc., D.C.Neb.1959, 169 F.Supp. 460, it was held that the Due Process Clause did not prevent the court from obtaining jurisdiction in circumstances quite parallel to those here involved.

The tendency of expanding jurisdiction and the narrowing of the Due Process Clause is illustrated by the decision of the Wisconsin Supreme Court in Huck v. Chicago, St. P., M. & O. R. Co., 4 Wis. 2d 132, 90 N.W.2d 154.

Here it is sought to hold Elmora on the basis of Elmora's, then known as American Type Founders, Inc., having solicited a contract in Wisconsin, having shipped the equipment into Wisconsin, having contracted to and furnished supervisory help for its installation, having furnished instruction in Wisconsin on its operation, and having filed a conditional sales contract pertaining to the equipment with the Register of Deeds in Milwaukee County, Wisconsin. All of this was done at a time when American Type Founders, Inc., was licensed to do business in this State. There is some controversy as to whether the contract was entirely or only partially solicited in Wisconsin.

The expanding trend of permitting States to have jurisdiction over foreign corporations is illustrated in a different field, the field of taxation, by the decisions of the United States Supreme Court in Northwestern States Portland Cement Co. v. State of Minnesota, U.S., 79 S.Ct. 357, and Railway Express Agency, Inc. v. Com. of Virginia, U.S., 79 S.Ct. 411.

It is the conclusion of this court that under the present concepts, a defendant who has conducted the above activities within a State is and should be amenable to process within that State. Maintenance of such a suit does not offend "traditional notions of fair play and substantial justice."

Plaintiff is directed to prepare an order denying impleaded defendant's motions to dismiss the cross-complaint and quash the return of service upon it, submitting the order to impleaded defendant's counsel for approval as to form only.