Howard RAASCH, Plaintiff,

v.

Randolph G. DULANY, d/b/a D. & C. Sales & Service, Liberty Mutual Insurance Company, a foreign corporation, Travelers Indemnity Company, a foreign corporation, Avis Rent-A-Car System, Inc., a foreign corporation, and Avis, Inc., a foreign corporation, Defendants.

Burnette RAASCH, Plaintiff,

v.

Randolph G. DULANY, d/b/a D. & C. Sales and Service, Liberty Mutual Insurance Company, a foreign corporation, Travelers Insurance Company and/or Travelers Indemnity Company, a foreign corporation, Defendants.

AVIS RENT–A–CAR SYSTEM, INC., a foreign corporation, and Avis, Inc., Defendants and Third-Party Plaintiffs,

v.

Howard RAASCH and General Casualty Company of Wisconsin, a Wisconsin corporation, Third-Party Defendants.

Nos. 64–C–357, 65–C–314.

United States District Court
E. D. Wisconsin.

Sept. 28, 1967.

Stephen R. Miller, of Sabrowsky, Raasch, Reidenbach & Miller, Milwaukee, Wis., for plaintiffs.

Kurt H. Frauen, of Wickham, Borgelt, Skogstad & Powell, Milwaukee, Wis., for defendants Randolph G. Dulany and Liberty Mutual Ins. Co.

O. Robert Hauser, of Immell, Herro, Buehner, DeWitt & Sundby, Madison, Wis.; for defendants Avis Rent-A-Car System, Inc. and Avis, Inc.

Stephen C. de Vries, of de Vries, Hollander & Vlasak, Milwaukee, Wis., for third-party defendants, Howard Raasch and General Casualty Co. of Wis.

## OPINION AND ORDER

REYNOLDS, Judge.

Before this court is a motion by one of the defendants, Avis Rent-A-Car System, Inc. (hereinafter referred to as "Avis"), for summary judgment.

On November 25, 1966, an order was entered on stipulation that two above-captioned lawsuits pending before this court be consolidated for trial. These suits arose out of an automobile accident which occurred on October 8, 1963. Plaintiffs are Howard Raasch and Burnette Raasch who were driver and passenger, respectively, of one of the cars involved. Their complaints allege that each named defendant is vicariously liable for damages because of the negligence of the driver of the other automobile, William J. Vadnais, who was killed in the accident. According to the complaints, Vadnais was an employee of one of the defendants, Randolph G. Dulany, d/b/a D. & C. Sales and Service (hereinafter referred to as "D. & C."), and was acting within the scope of his employment. D. & C. allegedly was engaged in a joint enterprise and/or was an agent of another one of the defendants, Avis Rent-A-Car System, Inc. Avis admits to being the "licensor" of D. & C. but not to being its "principal" for tort liability purposes. Strongly disclaiming the existence of an agency relationship, Avis has moved for summary judgment.

Under the federal summary judgment rule (F.R.Civ.P. 56), summary judgment must be entered if documents on file with the court establish (1) "that there is no genuine issue as to any material facts," and (2) "that the moving party

is entitled to a judgment as a matter of law." According to Professor Moore,

"The courts are in entire agreement that the moving party for summary judgment has the burden of showing the absence of any genuine issue as to all the material facts, which, under applicable principles of substantive law, entitle him to judgment as a matter of law.

"The courts hold the movant to a strict standard. To satisfy his burden the movant must make a showing that is quite clear what the truth is, and that excludes any real doubt as to the existence of any genuine issue of material fact." 6 Moore, Federal Practice § 56.15[3], at 2335–6 (2d ed. 1966). See also Sartor v. Arkansas Natural Gas Corp., 321 U.S. 620 (1944).

 "On summary judgment," the Supreme Court has said, "the inferences to be drawn from the underlying facts contained in such materials [as are presented to the court] must be viewed in the light most favorable to the party opposing the motion." United States v. Diebold, Inc., 369 U.S. 654, 655 (1962), 82 S.Ct. 993, 994, 8 L.Ed.2d 176. Rule 56 "should be cautiously invoked." Associated Press v. United States, 326 U.S. 1, 6, 65 S.Ct. 1416, 89 L.Ed. 2013 (1945). The United States Court of Appeals for this Circuit has said that if "any doubt remains as to the existence of a genuine issue of material fact, such doubt must be resolved against the movant for summary judgment and the motion for summary judgment must be denied." Montoux v. Gulling Auto Electric, 295 F.2d 573, 576 (7th Cir. 1961).

For the purposes of this motion, Avis does not contest the allegations as to Vadnais' negligence, nor does it question the claim that he was acting within the scope of his employment by D. & C. Instead, Avis concentrates its fire on another issue; namely *its* relationship with D. & C. Specifically, it contends that there is nothing in the documents on file in this court that could establish

an agency or joint enterprise between these two parties; accordingly, that there is no basis for imposing tort liability for Vadnais' negligence on Avis; and, thus, that Avis is entitled to judgment as a matter of law.

Terminological confusion has been rampant in agency law. Accordingly, *this court explicitly adopts, for the purpose of this opinion, the terminology of Restatement, Agency 2d.* The Restatement, Agency 2d, defines "Agency" as "the fiduciary relation which results from the manifestation of consent by one person to another that the other shall act on his behalf and subject to his control, and consent by the other so to act." Id. § 1(1). "The one for whom action is to be taken is the principal." Id. § 1 (2). "The one who is to act is the agent." Id. § 1(3). "A master is a principal who employs an agent to perform service in his affairs and who controls or has the right to control the physical conduct of the other in the performance of the service." Id. § 2(1). "A servant is an agent employed by a master to perform service in his affairs whose physical conduct in the performance of the service is controlled or is subject to the right to control by the master." Id. § 2(2). According to the *Comment* to § 2 of the Restatement, "A master is a species of principal, and a servant is a species of agent."

The Restatement says that one of the chief reasons for distinguishing between the two terms, i. e. between "servants" on the one hand and the larger class, "agents," on the other, is to distinguish between (1) "the kind of representatives for whose physical conduct the one for whom they act is made responsible" (servants) and (2) "other representatives for whose physical conduct the one for whom they act is not responsible" (agents). Restatement, Agency 2d, Introductory Note to Title B, Torts of Servants. Accordingly, this court uses the term "master" to indicate the kind of "principal" that *is* responsible for the negligent physical conduct of his "servants." Restatement, Agency 2d §§ 219,

250. Our choice of terms is in accord not only with the Restatement, but also with Corpus Juris Secundum and American Jurisprudence.

■ The law governing the imposition of tort liability on "masters" for the torts of "servants" is, in comparison, fairly clear.[1] "Masters" are civilly liable for those negligent acts committed by their "servants" while acting within the scope of their employment. 35 Am.Jur., Master and Servant § 532; 57 C.J.S. Master and Servant § 570. Furthermore, "a master is liable for acts done, by one whom the servant employs, with express or implied authority from the master, or with the master's acquiescence or ratification, to assist the servant in the master's work." 57 C.J.S. Master and Servant § 564a; accord 35 Am.Jur., Master and Servant § 540. Also, participants in a joint adventure may each be liable for torts of "servants" of the joint undertaking. 48 C.J.S. Joint Adventures § 14e; 30 Am.Jur., Joint Adventures § 56. Accordingly, if Avis is either D. & C.'s "master," or if it is engaged in a joint adventure with D. & C., it might be found liable at trial for Vadnais' negligence.

■ Essential to the existence of either a joint adventure or a master-servant relationship is control or a right of control over the work of the alleged joint adventurer or servant. 48 C.J.S. Joint Adventures § 2; 30 Am.Jur., Joint Adventures §§ 1, 2, and 10; 57 C.J.S. Master and Servant § 563; 35 Am.Jur., Master and Servant § 2; see Bond v. Harrel, 13 Wis.2d 369, 108 N.W.2d 552, 98 A.L.R.2d 330 (1961). If Avis did not have the right to exercise the requisite control over D. & C., D. & C. would be, as Avis contends, an "independent contractor," and Avis would be free from liability. The chief thrust of Avis' argument on this motion has been directed at minimizing Avis' control over D. & C.'s operations and at establishing D. & C.'s status as an independent contractor.

■ In the opinion of this court, Avis' showing falls far short of that necessary to justify granting a motion for summary judgment.

It is apparent from the written contract between these two parties that Avis has a right to exercise substantial control over the way D. & C. does business. According to the contract between the two parties, (1) D. & C. can rent cars only in Marquette and Ishpeming, Michigan; (2) D. & C. must submit monthly motor vehicle reports to Avis on Avis' forms; (3) D. & C. must purchase fire, theft, and collision insurance for customers; (4) D. & C. must purchase automobile liability insurance up to a specified minimum set by Avis, *and* this insurance *must protect Avis*; (5) D. & C. must use the Avis Standard Rental Agreement; (6) D. & C. must extend special privileges to favored customers of Avis; (7) D. & C. must honor credit cards approved by Avis; (8) D. & C. may not associate with any other national or regional system; (9) D. & C. must "state, display, and advertise" its rates in accordance with Avis instructions, and Avis reserves the right to disapprove any advertising in which the name "Avis" is used; (9) D. & C. must provide automobile servicing at cost to other "licensees"; and (10) D. & C. may not charge rates that Avis finds "unreasonably high or unreasonably low" and may not change rates at all without giving Avis thirty days' written notice. Moreover, D. & C. must conduct its business "only in accordance with the methods, rules and regulations of the System as now constituted" *or* as changed from time to time by Avis and must comply "with all bulletins, directives by letter and instructions contained in Avis System Operator's Manual" as issued "from time to time" by Avis. Avis can terminate the contract, after notice, for "cause"; and "cause" is defined as the failure of D. & C. to meet "reasonable standards" prescribed by Avis from time to time.

---

1. Moreover, it does not seem to vary in material particulars from jurisdiction to jurisdiction. Thus, we need not consider here the lurking conflicts-of-law question adverted to in the movant's brief.

As to the possibility of there being a joint adventure, it is noteworthy that the two parties share decision-making power over advertising, that they share expenses for advertising, that they share automobile storage facilities, and that Avis receives a percentage of D. & C.'s gross receipts. Both parties cooperate in fostering customer reliance on the Avis name, and it is on the Avis name that rental car customers of D. & C. for the most part rely. It is especially noteworthy that at the time of the accident, Vadnais was transporting a car from an Avis station in Chicago to a D. & C. facility in Ishpeming, Michigan. This fact, together with the fact that it is clearly in Avis' interest to facilitate convenient transport of Avis-connected cars from city to city, strongly suggests that Vadnais was in part on Avis' business at the time in question.

An affidavit of an Avis officer, William McPike, suggests that in practice Avis exercised comparatively little control over its licensees. But the authorities cited above are unanimous in saying that it is a *right* of control, not *actual* control, that is crucial to the existence of a master-servant relationship. Moreover, the very clash between affidavit and contract indicates that the issue of Avis' relationship to D. & C. is in genuine dispute and should not be resolved on a motion for summary judgment.

Lopinsky v. Hertz Drive-Ur-Self Systems, 194 F.2d 422 (2d Cir. 1951),—a case cited by Avis as "dispositive" of the present controversy—does not say otherwise. The principal opinion in that case, a four-paragraph, *per curiam* affirmance, never reached the issue in controversy here. The court considered only the question of whether Hertz's licensing of one Carey to operate a rent-a-car business in New York meant that Hertz was "doing business" in New York and thus "jurisdictionally present" in New York, i. e. capable of being required to defend a lawsuit in the courts of that state. It held only that Hertz could not be sued in New York. In reaching this result, it employed the *word* "agency." But the question of Carey's alleged "agency" for tort liability purposes was never considered. Of course, neither was the even more difficult question of whether the agency issue should be resolved in favor of Hertz *on summary judgment* considered in the *Lopinsky* case. The identity of terms employed in the two situations should not obscure the fact that different questions are posed, that different principles govern, and that different considerations of policy must be brought to bear. Precedent on one of these questions is of little weight in deciding the other.

For the foregoing reasons,

It is ordered that the motion of Avis Rent-A-Car System, Inc. for summary judgment must be and it hereby is denied.